## N. H. SAVINGS BANK *v.* DOWNING.

An agreement between the creditor and the makers of a note left as collateral, to give delay, if without consideration, does not exonerate the sureties upon the principal note.

An agreement by an officer of a bank to give notice to a surety in case of a default on the part of the makers of a note pledged as collateral, does not bind the bank in the absence of some authority conferred upon such officer to make the agreement.

Savings Bank *v.* Downing.

A creditor who has not obtained possession of personal property mortgaged for his security, is not answerable to the sureties for its application upon the debt, if *tortiously removed without the agency or consent of the creditor;* nor if removed by the common consent of the creditor, debtor, and sureties.

Where the by-laws of a bank prescribe that the treasurer shall notify the principal and sureties, personally or in writing, of any dues unattended to, and require prompt payment of the same, an omission of this duty *does not discharge the sureties upon a note due to such bank.*

ASSUMPSIT on a note made by Simon Brown as principal, and William Kent and Lewis Downing, the defendant, as sureties, for $800, payable to the New-Hampshire Savings Bank or order in four months, with interest after. The following indorsements were found upon the note: " Int. is paid to Dec. 12 1838." " 1839 Apr. 15 rec'd eighty dollars prin. & int. to Apr. 12 1839." " Aug. 31 rec'd eighty dollars prin. & int. to Aug. 12 1839." " 1840 Sept. 5 rec'd eighty dollars prin." " Int. is paid to Jan'y 5 1841." " Int. is paid to July 5 1841." .

It appeared that Brown to secure the payment of the note, had mortgaged to the bank an " Adams printing machine" with appurtenances, and soon afterward left Concord and sent to Downing and Kent a power of attorney authorizing them to sell the machine to pay the note.

Messrs. Marsh, Capen & Lyon, applying for the purchase, were told that the price of the machine was $830, and were referred to the bank, as holding a mortgage upon it, for further arrangements.

It was afterward agreed between Kent, the bank, and the firm of Marsh, Capen & Lyon, that the latter should purchase the machine and give their note to the bank for $800, payable in installments of ten per cent every four months, and that Kent and Downing should execute a bill of sale of it, to be lodged with the bank for delivery upon the payment of the note. This was done, and the machine was removed by the purchasers to Lancaster, Mass. The remainder of the price, $30, was paid to Kent, at

Savings Bank *v.* Downing.

whose request Dr. Morril, who acted for the bank in the business, agreed to give notice of any default that might occur in making the stipulated payments. No such notice however was ever given.

The note, which was made payable to Kent and Downing, was exhibited, and was unpaid except as appeared by indorsements upon it corresponding with those upon the note in suit, omitting the last one. It also appeared, that the bank had agreed at the request of Marsh, Capen & Lyon, to extend for a period of four months, the payment which fell due upon the 5th of January 1841, upon the understanding that it should be paid at that time together with the other check which would then become due.

In March 1842, application was made in behalf of the bank to the defendant, who replied that he did not consider himself to be holden to pay the note ; that in regard to the printing machine, he could not conveniently go to Boston to look it up ; that he would rather pay another for doing so than go himself. The witness who testified to this conversation, soon afterward at the request of the bank, made some ineffectual endeavors to recover the machine. The by-laws of the bank were also shown in evidence, of which the following is an extract :

"On all loans on personal security alone, ten per cent of the principal in addition to the interest shall be paid every four months ; and it shall be the duty of the treasurer to notify the principal and sureties, either personally or in writing, of any dues unattended to, and to require prompt payment of the same."

To this evidence the plaintiffs objected, as insufficient to establish a defence ; but the court ruled that it was sufficient ; and a verdict was taken for the defendant, which the plaintiff moved to set aside, and for a new trial.

*Ainsworth*, for the plaintiff, contended, that the bank had not relinquished the press so as to injure the sureties.

That they were not bound to give notice of the default of Marsh, Capen & Lyon, nor were they bound to sue. 6 Mass. 519 ; 9 Mass. 316 ; 3 N. H. 231 ; 4 Pick. 382.

If a creditor takes a pledge, he is bound to hold it for the benefit of the surety, and is answerable for its application to the debt. And if he deal with it so as to lose the benefit of it, he is answerable in general to the surety. But if the surety know of such dealing and acquiesce in it he can not afterward complain.

Here the sureties themselves assisted, as the attorneys of the debtor, in disposing of the pledge, and actually received part of the price.

The agreement to delay the payment of the installment upon the collateral note, was not injurious to the defendant, because it was merely collateral, and because the agreement was without consideration and not binding upon the parties. Story on Bills sec. 426 ; 10 N. H. 162 ; 13 Maine 202.

*Pierce*, for the defendant. 1. The by-laws make a part of the contract between the parties, and the defendant is discharged by their operation. *Bank* v. *Ela*, 11 N. H. 335.

2. The plaintiff had the means of payment, which they were bound to use for the benefit of the sureties. These acted as agents of the debtor and of the creditors, and did not themselves undertake to dispose of the pledge, but left it to the bank. The bank and not the sureties agreed to take the note of Marsh, Capen & Lyon, and suffered them to take away the printing machine.

3. The sureties could not have objected, because the condition of the mortgage having been broken, the property became the plaintiff's to deal with according to law. Even Brown is discharged.

4. The note of Marsh, Capen & Lyon, was payment of the note of Brown.

The counsel for the defence subsequently furnished the

following authorities : *Adams Bank* v. *Anthony*, 18 Pick. 242 ; *Baker* v. *Briggs*, 8 Pick. 129 ; *Lichtenthaler* v. *Thompson*, 13 S. & Rawle 157 ; Theobald's Prin. & Sur. 142 ; 4 Vesey 829 ; 2 Pick. 223 ; *Commercial Bank* v. *French*, 21 Pick. 488 ; *Praed* v. *Gardiner*, 2 Cox 86 ; *State* v. *Vanderslice*, 8 S. & Rawle 452 ; *Low* v. *Smart*, 5 N. H. 353.

GILCHRIST, J.   This is an action brought by the bank to recover the amount remaining unpaid, for which the defendant signed the note in suit as one of the sureties of Brown.

The defence is, that the bank held a mortgage of a printing machine, made by Brown to secure the payment of the note, and that they have so dealt with this security as to impair the benefits which the sureties were entitled to derive from it.

From the evidence reported it appears, that the sale of the machine to Marsh, Capen & Lyon, if made at all, was made by the sureties under a power from Brown, with the concurrence of the bank, who held the relation of mortgagee, and who could do no more than consent to the arrangement.   The removal of the machine to Lancaster was also made as much with the concurrence of the sureties as with that of the bank, and the evidence shows no agency of the bank whatever in its removal, nor any consent to such a measure, except as a part of the general arrangement of the sale of the chattel upon the credit which was stipulated, and to which the defendant, as associated with Kent in the power conferred by Brown, was a necessary party, and without whose consent the act of the removal was a mere tort upon all the parties interested in the property, the bank as well as the others.

The case affords no evidence from which it can legally be presumed that the bank consented to take the note which Marsh, Capen & Lyon gave to secure the price of

the machine, as a substitute for that of Brown and his sureties. That note was in terms payable to Kent and Downing, who also received the balance of the purchase money of the purchasers. It does not appear to have been indorsed by them to the bank, nor to have become its property in any other form or manner, except so far as the transactions adverted to and the custody of the paper itself, indicate an intention of the parties that it should stand as collateral to the note of Brown.

It is said that the defendant was entitled to receive notice from the bank, of the omission of Marsh, Capen & Lyon, to pay the stipulated checks or installments upon the note, as well upon the ground that Dr. Morril agreed to give such notice, as that the by-laws of the institution require it to be given in all cases of default.

But it does not appear that that agent of the bank had any authority to make such an agreement in its behalf, either expressly conferred, or resulting from any relation in which he stood toward that institution. If the agreement binds any one by force of any consideration on which it was based, it can not extend beyond the individual who made it, or be regarded as any thing more than a personal undertaking of that party.

As to the by-law, if it can be supposed to have been made for the advantage of those dealing with the bank, and as containing a stipulation to be kept by that institution in all cases, as a condition preliminary to enforcing the payment of the securities which they take in the way of their business, it must have been unadvisedly adopted. It is more reasonable to suppose its purpose to have been, to establish a rule for their own convenience and protection, and not to lay the foundation of such a claim as is here set up.

As an additional ground of defence, it is said that the plaintiffs consented to give an extension of the time

arranged for the payment of the note of Marsh, Capen & Lyon.

It is a general rule, that if a payee by a valid contract give time to the principal without the assent of the security, the latter will be discharged. *Bank* v. *Woodward,* 5 N. H. 99. But the agreement for delay must, like other agreements, be made upon a good consideration, in order to be valid, and the promise to pay interest contained in the note itself, is not a sufficient consideration for a promise on the part of the creditor to delay its collection ; and notwithstanding any such agreement either the principal or the surety may pay it when he pleases. *Bailey* v. *Adams,* 10 N. H. 164. Nothing is better settled than that mere delay to sue, without any binding agreement to do so, between the creditor and the principal debtor, does not injure the surety or exonerate him from his undertaking. *Bank* v. *French,* 21 Pick. 489.

The note upon which the installment was due, was payable in terms to the sureties. No agreement which the bank could have made, would probably have prevented their commencing a suit upon it for the recovery of any part of it which might be due, unless some special power, of which the case presents no evidence, had been by them conferred upon the bank for that purpose.

But the decision is sufficiently based upon the ground that no valid agreement for delay was made which would have bound the bank itself.

The conclusion therefore is, that the evidence does not furnish a defence to the action. The verdict must be set aside and a

*New trial granted.*